**William E. BROCK, Secretary of Labor, United States Department of Labor, Plaintiff-Appellee,**

v.

**TWO "R" DRILLING CO., INC., et al., Defendants-Appellants.**

**No. 84–3236.**

United States Court of Appeals, Fifth Circuit.

Oct. 7, 1985.

Clark, Chief Judge, filed dissenting opinion.

Ryan & Willeford, John H. Ryan, Ellis B. Muroy, David A. Lang, New Orleans, La., for defendants-appellants.

Linda Jan S. Pack, Dept. of Labor, Barbara Kahl, Washington, D.C., for plaintiff-appellee.

Before CLARK, Chief Judge, GARWOOD and JOLLY, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant, Two "R" Drilling Company, Inc. (Two R) appeals from a judgment following a bench trial for the plaintiff, Wil-

liam E. Brock, Secretary of Labor (Secretary), holding that defendant's incentive payment (bonus) must be included in the "regular rate" of pay of its employees pursuant to section 7 of the Federal Labor Standards Act (FLSA), 29 U.S.C. § 207, for the purpose of computing the minimum overtime premium required by law. We reverse.

## FACTS AND PROCEEDINGS BELOW

Two R is a fossil fuel drilling company which operates in the inland waters of Louisiana. The company operates floating drilling barges for which it employs various crew members, such as motor men, derrick men, rotary helpers, roustabouts, and galley hands. All are hourly employees whose "work hitch" requires that they work twelve-hour shifts for seven consecutive days followed by seven days shore leave. During the relevant time period, these employees received "straight time" hourly wages in excess of the FLSA minimum wage for the first forty hours and "time and one-half" of these hourly rates for all hours worked in excess of forty in a week.[1] In addition, Two R paid its employees a bonus whenever they worked eighty-four hours or longer in any week, and met other specified conditions.[2] The bonus equaled one and one-half times the employee's regular hourly rate multiplied by ten.

On July 29, 1981, the Secretary filed a complaint against Two R, Robert Reeves (its President) and Charles Reeves (its Vice President) alleging violations of the FLSA by failing to include the bonuses in an employee's "regular rate" of pay when calculating overtime compensation. Two R denied liability. The parties submitted a joint stipulation of facts, and separated the liability and quantum issues. In 1984, the district court issued its findings of fact and conclusions of law on the issue of liability in which it held that Two R's failure to include the bonus in its employees' regular rate for purposes of calculating the overtime premium constituted a violation of the overtime provisions of the FLSA. *Donovan v. Two "R" Drilling Co., Inc.*, 581 F.Supp. 526 (E.D.La.1984). The district court ruled that the bonuses were not excludable from the regular rate under FLSA section 7(e)(5) (29 U.S.C. § 207(e)(5)), section 7(e)(3)(a) (29 U.S.C. § 207(e)(3)(a)), or section 4(a)(2) of the Portal-to-Portal Act (29 U.S.C. § 254(a)(2)). The court also decided that, although a restitutionary injunction should be issued, a prospective injunction should not. It also held that the violation was willful, thus making Two R liable for three years', rather than two years', back pay; and that Two R acted in good faith. The court did not award liquidated damages, but it did award prejudgment interest. By its present appeal, Two R challenges the district court's rulings against it.

## DISCUSSION

The FLSA requires payment of time and one-half of an employee's "regular rate" for all hours worked over forty in a workweek. 29 U.S.C. § 207(a)(1). The "regular rate" includes all remuneration paid to an employee and is generally calculated by dividing the total compensation paid by the number of hours actually worked in a workweek. The Secretary contends that the bonus, which Two R paid to its employees who worked not less than a full eighty-four-hour weekly "work hitch," is a sum that is required to be included in the employee's regular rate for the purpose of computing the overtime premium. As overtime is due at one and one-half times the regular rate, any items included in the

1. Employees also received a three-hour travel time payment for travel to and from the drilling rig and the dock. This payment was considered working time; was properly compensated; and is not at issue in this case. It is therefore eliminated from the computations used herein.

2. The other conditions were: (1) reporting to the "showup" dock on time for transportation to the drilling barge; (2) arriving in proper physical and mental condition to perform the work assigned; (3) assembling the attire and personal effects necessary for a seven-day tour; and (4) remaining on the drilling barge between the twelve-hour shifts.

regular rate have the effect of increasing the amount of overtime earned. Because appellant did not, in computing the employees' regular rate used to ascertain the overtime premium, add the incentive payment to their hourly wage rates, the Secretary maintains that appellant did not pay the minimum overtime required by the FLSA to those employees who received the incentive payments. At issue is the characterization to be given to the additional payment. The Secretary contends that the entire payment is a bonus intended to induce employees to complete the scheduled eighty-four-hour workweek and that no part of it consisted of "extra compensation" creditable toward overtime compensation. In his view, the entire payment was as much a part of the regular pay of Two R's employees as the regular pay for the first forty hours of the workweek. Two R asserted that at least part of that payment is "extra compensation" which is creditable toward overtime compensation, and that if it were included in the regular rate, Two R would be required to pay overtime premium on overtime premium, a result which has been rejected by the Supreme Court. *Bay Ridge Operating Co. v. Aaron,* 334 U.S. 446, 68 S.Ct. 1186, 92 L.Ed. 1502 (1945).

Certain payments made to employees are excepted from inclusion in the regular rate of pay. In *Bay Ridge Operating Co. v. Aaron,* the Supreme Court concluded that, by enacting the overtime provisions of the FLSA, Congress could not have intended to allow overtime premium on overtime premium, which would result if any payments intended to be overtime compensation were included in the regular rate. Consequently, the Court held that the regular rate need only reflect those payments which the parties have agreed shall be received regularly during the workweek exclusive of overtime payments. *Id.* at 465–66, 68 S.Ct. at 1197. This decision is codified at 29 U.S.C. § 207(e)(5) which provides:

"(e) ... the 'regular rate' at which an employee is employed ... shall not be deemed to include—

"....

"(5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or *in excess of the maximum workweek* applicable to such employee *under subsection (a)* of this section or in excess of the employee's normal working hours or regular working hours, as the case may be; ...." (Emphasis added.)

The district court declined to rely upon Two R's assertions that the incentive payment was compensation for overtime finding that it "had *no relation* to the *number* of overtime hours worked ... [but] was paid to employees who completed a regularly scheduled hitch and who satisfied other specified conditions." *Donovan v. Two "R" Drilling Co., Inc.,* 581 F.Supp. at 532 (emphasis added). The court therefore analogized this case to *Bibb Manufacturing Co. v. Walling,* 164 F.2d 179 (5th Cir. 1947), *cert. denied,* 333 U.S. 836, 68 S.Ct. 607, 92 L.Ed. 1121 (1948). In that case, the employer had failed to include an attendance or production bonus of $2.00 per week as part of the employees' regular rate of pay on which overtime compensation was computed and paid because it contended that the payment was an overtime bonus. That district court had found that the bonus was paid regularly as "an attendance bonus for working the full hours required by the ... [employer each week] ... *without regard to whether the week was an overtime or a non-overtime workweek." Id.* at 180 n. 2 (emphasis added). For this reason, that court found that "the bonus was not paid simply for working overtime hours, as ... [i]ndeed, the working of the first hour or the first 8 hours was just as essential to earning the bonus as was working hours beyond forty—in fact, more essential in that *the bonus was paid in frequent instances though no overtime hours were worked." Id.* (emphasis added).

■ In the instant case, however, it is not true that the incentive payment had *no*

relation to the number of overtime hours worked. As the district court stated, "Any such employee who worked less than his tour of duty of 84 hours per week *or* had failed to satisfy the other conditions was paid premium pay for all hours in excess of 40 during that workweek, but did not receive the incentive payment ...." *Donovan v. Two "R" Drilling Co., Inc.,* 581 F.Supp. at 530 (emphasis added). Thus, to receive the payment the employee did have to work a significant number of overtime hours—*at least forty-four* hours of overtime, that is, time "in excess of the maximum [forty-hour] workweek applicable to such employee under [section 207(a)]." *See* § 207(e)(5).[3]

The present set of facts is therefore more similar to those in *Brennan v. Valley Towing Co., Inc.,* 515 F.2d 100 (9th Cir. 1975). In that case, the Ninth Circuit approved a compensation plan under which Valley Towing paid its employees a separate rate for "after-hours work," which consisted of remaining on duty after their regular forty-seven-hour six-day workweek, as long as the payment for such hours worked was at least equal to time and one-half of the rate paid for the first forty hours of each workweek. In the case at bar, the bonus definitely complied with this requirement, since the company paid time and one-half for each hour worked beyond forty, and paid the bonus in addi-

tion when the work hitch of eighty-four hours was reached. Thus, as in *Valley Towing,* "[t]his is not a case where there has been no attempt to pay a stepped-up rate for overtime hours." *Id.* at 109. The *Valley Towing* Court found that "[t]he company ... had explicit understandings with its employees that those who chose to remain on duty after regular working hours would be compensated either by a flat rate payment of $3.00 per hour, or by being permitted to retain 25% of any gross tow bill." *Id.* at 103. The Ninth Circuit affirmed the district court's conclusion that " '[t]he extra compensation paid ... [thereunder] is creditable toward overtime compensation and not to be included in computing the regular rate.' " *Id.* at 107. So long as it was possible to conclude from the evidence that the higher pay for after-hours work was conceived by the company and perceived by the employees as a reward for putting in hours beyond the established workweek for work similar to that during the regular workweek, such compensation could be characterized as an overtime premium. *Id.* at 108–09. *See Bay Ridge Operating Co. v. Aaron,* 334 U.S. at 465–66, 68 S.Ct. at 1197 (defining overtime premium as "extra pay for extra work because of previous work for a specified number of hours in the workweek or workday"). The cases cited by the Secretary[4] are distinguishable from the instant

---

3. Since at least forty-four hours of overtime had to be worked in order to be eligible for the bonus, which was equivalent to ten hours of overtime pay, it is evident that the bonus was not a subterfuge. For the bonus to be earned, one had to have worked more overtime than regular time. This was so *regardless* of whether the employee met the other conditions specified in note 2, *supra;* even if all those conditions were met, the bonus was not payable unless the employee worked at least forty-four overtime hours. The bonus was not paid whatever hours were worked, but only if at least forty-four overtime hours were worked.

4. *Landaas v. Canister Co.,* 188 F.2d 768, 770–71 (3d Cir.1951) (certain amount of extra pay for *every* hour worked if employee did not quit before working six months as effort to decrease labor turnover and increase goodwill among employees considered part of regular rate of compensation); *Manosky v. Bethlehem-Hing-*

*ham Shipyard,* 177 F.2d 529, 534 (1st Cir.1949) (amount of incentive payments in addition to basic hourly wage, scaled according to employee's speed in completing certain specified jobs, would be element in computation of employee's regular rate); *Jacksonville Paper Co. v. McComb,* 167 F.2d 448, 449 (5th Cir.1948) (bonus declared as to some employees based on percentage of their total pay in preceding year but payable in twelve monthly installments in succeeding year if employee were still working for corporation considered part of regular compensation because, as paid, the employee could enforce payment each month by continuing to work for company and was working for it as much as for other wages), *rev'd on other grounds,* 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949); *Walling v. Wall Wire Products Co.,* 161 F.2d 470, 472–73 (6th Cir.) (profit-sharing bonus based on actual number of hours worked straight time, with no profit sharing on overtime, included in regular

case as the bonuses paid in those cases were not based upon the fact that the employee had worked any overtime hours.

The Secretary contends that the bonus should not be considered an overtime premium because the same lump-sum bonus payment of ten hours' salary at time and one-half was paid to each employee who worked at least eighty-four hours even if he should go on to work more than eighty-four hours.[5] However, this amount was paid in addition to the time and one-half required by the statute for hours worked in excess of forty per week. The statute does not require that each overtime hour be compensated at the same rate, only that each be paid at a rate not less than time and one-half the regular rate. Nor does the statute purport to condition the "overtime" status of payments on any requirement that all overtime hours be compensated at the same rate. Nothing in the statute prevents an employer from paying, and treating as "overtime," the first five hours of overtime in the week each at time and one-half the regular rate, and the sixth and subsequent overtime hours in the week each at twice the regular rate. Conversely, nothing prevents, or denies "overtime" characterization to, payment of the first five overtime hours in the week each at twice the regular rate, and the sixth and subsequent weekly overtime hours each at time and one-half the regular rate. A violation is thus not established by regarding the bonus here as affording a higher hourly rate for the first forty-four hours of weekly overtime than for the forty-fifth and subsequent overtime hours, as no overtime hour was compensated at less than time and one-half the hourly rate[6] paid where no more hours were worked in the

week than the section 207(a) maximum of forty hours. The fact that the bonus amount here did not vary according to the extent that an employee may have worked more than forty-four overtime hours in the week seems analogous to the fact that payments for after-hours work compensated by a twenty-five percent commission for towing jobs undertaken by employees after regular hours in *Valley Towing* also did not vary according to the number of after-hours worked. But, that Court did not find the fact that the twenty-five percent commission was offered without regard to any regular hourly rate of pay required treating the payment as primarily regular rather than overtime pay, as long as the payment was conditioned on working in excess of "normal" or "regular working hours" (*see* § 207(e)(5)), was viewed by both parties as a premium above the rate of pay for similar work during the basic workweek and amounted to a full time and one-half of the payment for "straight time." *Brennan v. Valley Towing Co.,* 515 F.2d at 108–09.

The district court stated that there was not sufficient evidence in the record to determine that the incentive payment or any portion thereof was compensation for overtime as the joint stipulation of the parties did not establish or permit such an inference, and there was no other evidence in the record from which the court could draw such an inference, as Two R did not present any evidence concerning how these payments were recorded on its books or its employees' pay stubs or how they were viewed by its employees. *Donovan v. Two "R" Drilling Co., Inc.,* 581 F.Supp. at 532. However, the joint stipulation of the parties does specifically explain how the bonus

rate), *cert. denied,* 331 U.S. 828, 67 S.Ct. 1351, 91 L.Ed. 1843 (1947); *Walling v. Garlock Packing Co.,* 159 F.2d 44 (2d Cir.) (wage premium in amount equal to dividend declared on certain number of shares of employer's common stock paid each quarter to each hourly employee who had worked for six months based solely on forty-hour workweek includable in regular rate), *cert. denied,* 331 U.S. 820, 67 S.Ct. 1310, 91 L.Ed. 1837 (1947); *Walling v. Richmond Screw Anchor Co.,* 154 F.2d 780, 781 (2d Cir.) (monthly bonus of ten percent of weekly straight time

earnings for previous month, without taking into account overtime earnings, includable in regular rate), *cert. denied,* 328 U.S. 870, 66 S.Ct. 1383, 90 L.Ed. 1640 (1946).

5. This happened, but only rarely (in less than fifteen percent of the cases where the bonus was earned).

6. Which was well above the legal minimum.

payment was figured and paid. It also specifically states that all employees or applicants for employment were completely informed of the way in which the bonus payments were credited and paid, such that the court could not but conclude that there was an explicit understanding between the company and its employees that they would receive a higher level of pay for working overtime hours equal to or greater than forty-four. *See Valley Towing*, 515 F.2d at 108.

██ As the district court noted, "The purpose of the overtime provisions of the FLSA is to spread employment throughout the work force by putting financial pressure on the employer, and to compensate employees for the burden of overtime workweeks." *Donovan v. Two "R" Drilling Co., Inc.*, 581 F.Supp. at 532 (citing *Nunn's Battery & Electric Co. v. Goldberg*, 298 F.2d 516, 519 (5th Cir.1962)). In this case, a determination that the bonus payment made by Two R should not be included in the regular rate for the purpose of computing the overtime payment does not disserve the statutory policy of spreading the work and reducing the burden on workers.[7] For, once the court has determined that an express agreement has been reached by both the employer and the employee providing for a higher rate of pay for overtime hours than for the first forty hours per week, it remains only for the court to determine the sufficiency of that overtime pay rate in comparison with the rate separately agreed upon for the non-overtime hours. *Brennan v. Valley Towing Co., Inc.*, 515 F.2d at 109–10. If that rate is at least time and one-half, then the statutory requirement is met.

We hold that the bonus was not a part of the employees' "regular rate" of pay, being excluded by section 7(e)(5). We according-ly reverse the judgment of the district court.

REVERSED.

CLARK, Chief Judge, dissenting:

I respectfully dissent. The Secretary could determine that "bonus" payments at issue were not paid under the exclusion provided by 29 U.S.C. § 207(e)(5) for "certain hours worked ... because such hours are hours worked in excess of eight in a day or in excess of the maximum [40 hours] workweek ... or in excess of the employee's normal ... or regular working hours." As the majority opinion discloses in footnote 2, the "bonus" was paid for a pattern of behavior during the hours that were worked. As such, the Secretary could determine as he did that it must qualify for exemption, if at all, under 29 U.S.C. § 207(e)(3). This bonus exemption provision requires that the fact and amount of such payment be determined: (1) at the sole discretion of the employer, (2) at or near the end of the period, and (3) not pursuant to any prior agreement. Such a true bonus arrangement would not have served the ends of the employer, which clearly were to minimize crew disruption and maximize the efficiency of its personnel. Thus, the proper exemption provision required that it be offered in a definite, calculable sum in advance of the work week and the choice to enjoy it be placed within the employee's discretion. I would affirm the Secretary.

---

7. In fact, the district court stated: "The Court is not unmindful that its literal reading of section 7 of the FLSA and today's decision, requiring an employer to pay overtime on a bonus which it was not obligated to pay to its employees in the first place but which it did pay in good faith, may be viewed by some as harsh and unjust. Indeed, the Court feels that a literal reading of the statute under the circumstances of this case produces a result which the Congress could not have intended." 581 F.Supp. at 536.